UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTHEW C. BOLDEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Respondent. | Case No. ED CV 15-01560-DFM<br><br>MEMORANDUM OPINION AND ORDER |

　　　Matthew C. Bolden ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///
///
///
///
///

# I.

# BACKGROUND

Plaintiff filed an application for DIB on March 1, 2012. Administrative Record ("AR") 87, 206-12.[1] After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"). AR 97. After a postponement to allow Plaintiff time to find a representative, AR 52-68, a hearing was held on October 24, 2013, at which Plaintiff, who was then represented by counsel, testified, AR 35-51. In a written decision issued November 27, 2013, the ALJ denied Plaintiff's claim for benefits. AR 20-30. In reaching his decision, the ALJ found that Plaintiff had the medically determinable impairments of lumbar-spine degenerative disease, hypertension, anxiety, and depression. AR 22. But at step two of the five-step disability-evaluation process, the ALJ found that none of those impairments was "severe" before March 31, 2010, Plaintiff's date last insured. AR 22-29. The ALJ therefore found that Plaintiff was not disabled, and he did not reach the remaining steps in the evaluation process. AR 29-30.

Plaintiff requested review of the ALJ's decision. AR 12-14. On June 8, 2015, the Appeals Council denied review. AR 1-6. This action followed.

///
///
///

---

[1] Plaintiff also filed an application for Supplemental Security Income ("SSI"), AR 213-16, but it appears that his application was denied at the state-agency level, probably due to his wife's income of $5,500 a month, see AR 214; 20 C.F.R. § 416.1100. In any event, the ALJ addressed only Plaintiff's claim for DIB, see AR 20, and on appeal, Plaintiff does not argue that he is entitled to SSI, see JS at 2 (stating that Plaintiff "seeks judicial review" of the Commissioner's "denying his claim for a period of disability, disability insurance benefits, under Title II of the Social Security Act").

## II.
## DISCUSSION

Plaintiff argues that the ALJ failed to "properly consider[] the medical evidence as contained in the treating opinion of Paul Najarian, M.D," Joint Stipulation ("JS") at 4, and that "[t]he medical evidence as provided by Dr. Najarian demonstrates that [Plaintiff] suffers from a severe impairment thereby satisfying the de minimis step two test," id. at 9.

### A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. § 404.1527(c).

At step two of the sequential disability determination, an ALJ must determine whether the claimant has "a medically severe impairment or combination of impairments." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). This inquiry is "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

A medically determinable impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 404.1520(c); see also § 404.1521(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions, responding appropriately in a work setting, and dealing with changes in a work setting. § 404.1521(b). An impairment is not severe if it presents only a slight abnormality with "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (1985); Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen, 80 F.3d at 1290.

A "finding of no disability at step two" may be affirmed when there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'" (citing Smolen, 80 F.3d at 1290)). A court must determine whether substantial evidence in the record supported the ALJ's finding that a particular impairment was not severe. See id. at 687.

B.  **Relevant Facts**

In a disability report completed as part of his March 2012 DIB application, Plaintiff alleged that he has been disabled since January 31, 2006, because of his "[h]eart condition 3 st[e]nts," "mental problems," back and

4

neck pain, "right shoulder problems," and "right knee problems."[2] AR 230. Plaintiff last met the insured-status requirements under the Social Security Act on March 31, 2010, AR 22; thus, in order to obtain DIB, he needed to show that he became disabled on or before that date.

On October 11, 2013, Dr. Najarian, Plaintiff's primary-care physician, wrote a letter stating that he had treated Plaintiff for 10 years. AR 1848. Dr. Najarian stated that Plaintiff had a "history of" anxiety disorder, chronic sinusitis, gastroesophageal reflux disease, recurrent mild depression, intervertebral disc degeneration, hypertension, hyperlipidemia, ventricular fibrillation, coronary artery disease with stent, and anemia. AR 1848. Dr. Najarian wrote that Plaintiff has "issues with his pain and neuropathy secondary to his lumbar laminectomy," "limited range of motion in his spine and cannot lift > 10 lbs without pain," and "limited ability to stand or sit > 30 minutes at a time." Id.

In his October 24, 2013 written decision, the ALJ summarized the medical evidence and concluded that Plaintiff's medical conditions were not severe. AR 22-29. In doing so, he accorded "minimal weight" to Dr. Najarian's opinion. AR 28.

### C. Discussion

Plaintiff claims that the ALJ rejected Dr. Najarian's opinion "without articulating any legally sufficient rationale." JS at 8. But the ALJ did provide clear and convincing reasons for according minimal weight to Dr. Najarian's

---

[2] As previously mentioned, ALJ found that Plaintiff had the medically determinable impairments of lumbar-spine degenerative disease, hypertension, anxiety, and depression. AR 22. Plaintiff does not challenge the ALJ's findings that his alleged right-shoulder and right-knee problems and heart condition were not medically determinable impairments during the insured period.

opinion, all of which were supported by substantial evidence.[3]

First, the ALJ correctly found that Dr. Najarian "primarily summarized [Plaintiff's] mental and physical diagnoses," and "did not provide medically acceptable diagnostic findings to support the functional assessment prior to the date last insured." AR 28; see Thomas, 278 F.3d at 957 (finding that ALJ need not accept opinion of treating physician if "opinion is brief, conclusory, and inadequately supported by clinical findings"); Rayment v. Colvin, No. 15-05904, 2016 WL 6575011, at *5 (W.D. Wash. Nov. 7, 2016) (finding that although medical evaluations made after expiration of insured status are relevant, doctor's opinion was of "limited probative value" when "it related to a period nearly four years after plaintiff's date last insured"). Indeed, Dr. Najarian rendered his opinion in October 2013, and he nowhere states that it reflected Plaintiff's limitations on or before March 31, 2010, Plaintiff's date last insured. See AR 1848. And the opinion in fact appears to reflect only Plaintiff's then-current condition, as it is phrased in the present tense and lists at least two conditions—ventricular fibrillation and coronary artery disease with stent—that developed almost two years after March 2010. See AR 1848; see also AR 314 (Jan. 2012 hospital note showing placement of stents), 316-22 (Jan. 2012 hospital records showing inpatient treatment for "[c]hest pain with V-Fib cardiac arrest").[4]

---

[3] Because no other doctor rendered an opinion regarding Plaintiff's physical limitations, the ALJ was required to give clear and convincing reasons for rejecting Dr. Najarian's opinion. Carmickle, 533 F.3d at 1164.

[4] Plaintiff apparently first suffered ventricular fibrillation and cardiac arrest on January 12, 2012, when he became short of breath after he "cut down a tree & was loading the chopped wood into his truck bed." AR 316. That Plaintiff was able to engage in such physical labor as late as January 2012 further bolsters the ALJ's finding that Dr. Najarian's functional assessment— which limited Plaintiff to lifting no more than 10 pounds and standing for no

The ALJ also permissibly rejected Dr. Najarian's opinion because it was inconsistent with the "objective medical evidence as a whole," which "show[ed] [that Plaintiff] received sporadic treatments for his impairments prior to the date last insured" and that his conditions "responded to his treatments." AR 28; see Thomas, 278 F.3d at 957; Senko v. Astrue, 279 F. App'x 509, 511 (9th Cir. 2008) (finding that ALJ gave several "clear and convincing" reasons for rejecting treating doctor's opinion, including that his opinion was not supported by his treatment notes or other evidence in the record and that treatment notes showed that conditions responded to medication ). Indeed, although Dr. Najarian attributes Plaintiff's limitations to his lumbar-spine condition, Plaintiff's medical records show that his back problem basically resolved after he underwent surgery and physical therapy in early 2007, and that Plaintiff thereafter only rarely complained of neck or back pain.

Specifically, Plaintiff's medical records show that he underwent a lumbar-spine MRI in August 2006, AR 751, and that in September, he was diagnosed with right L4 radiculopathy secondary to a right L3/L4 extruded disc herniation, AR 853. At an October 2006 appointment with Dr. Najarian, Plaintiff complained of having low-back pain for three months and some numbness and weakness. AR 337. Dr. Najarian found that Plaintiff had an antalgic gait, some lumbar-spine tenderness, and a positive straight-leg raise on the right but normal motor strength, sensation, and reflexes. AR 337-38. Dr. Najarian diagnosed degeneration of the intervertebral disc and administered a steroid injection. AR 338. In November 2006, Plaintiff reported that the injection had helped and he requested another, which Dr. Najarian

---

longer than 30 minutes at a time—did not reflect Plaintiff's physical state on or before March 31, 2010.

administered. AR 355-56. In February 2007, Plaintiff underwent L3-L4 laminectomy surgery. AR 370, 377. On June 3, 2007, Plaintiff reported that his back pain had improved but that he was still unable to do physical activities and "long sitting." AR 376. A doctor found that Plaintiff had reduced lumbar-spine range of motion, negative straight-leg tests, and some weakness; she referred him to a pain program and physical therapy and prescribed pain medication. AR 377. Plaintiff began physical therapy, and by June 20, 2007, he reported that his pain level had improved. AR 409. At his next appointments with Dr. Najarian, in August and September 2007, and February, March, June, July, and mid-August 2008, Plaintiff did not complain about any neck or back pain. AR 430, 462-63, 495-96, 503-04, 515-16, 536-38, 544-45, 572-73.

  Plaintiff first complained of neck pain in late August 2008; upon examination, Dr. Najarian found that Plaintiff had paracervical muscle tenderness and also pain with neck movement, but he had normal neurological, motor, and sensory function. AR 588-89. In November 2008, Plaintiff complained of back pain; Dr. Najarian found that Plaintiff had tenderness of the lumbosacral spine but a negative straight-leg test and a normal gait. AR 617-18. Plaintiff complained of neck pain at two later appointments; Dr. Najarian found that Plaintiff had tenderness with and reduced and painful range of motion of the cervical spine, but normal neurological, motor, and sensory function. AR 643-44 (Feb. 2009, complaining of "moderate left neck pain for several week(s)" without numbness or weakness); 678-79 (Sept. 2009, complaining of increased neck pain since undergoing upper endoscopy). Plaintiff did not complain of any neck or back pain at any of his other appointments with Dr. Najarian during the insured period. See AR 597-98 (Sept. 2008), 663-64 (May 2009), 700-01 (June 2010), 718-19 (Oct. 2010). And in November 2010, shortly after Plaintiff's date last

insured, Dr. Najarian found that Plaintiff had normal range of motion of the lower back, a normal gait, and normal motor function, reflexes, and sensation of the lower extremities. AR 731. As such, substantial evidence supports the ALJ's finding that Dr. Najarian's opinion was inconsistent with the objective medical evidence showing few back symptoms after he recovered from surgery. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings" (citations omitted)). And although the medical records show that Plaintiff's physical condition worsened in 2012, the ALJ correctly found that those developments did not occur within the "relevant time period."[5] AR 25.

     Moreover, given that the medical evidence shows that Plaintiff's back condition essentially resolved with treatment, the ALJ did not err in finding that Plaintiff's medically determinable lumbar-spine impairment was nonsevere. Smolen, 80 F.3d at 1290 (finding that impairment is not severe when "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'" (citations omitted)); Harris v. Astrue, No. 08-0831, 2009 WL 801347, at *6 (N.D. Cal. Mar. 25, 2009) (finding conditions that resolved with treatment were not severe). Plaintiff, moreover, has challenged only the ALJ's rejection of Dr. Najarian's opinion, and has made no argument regarding the ALJ's findings that Plaintiff's mental conditions and hypertension were nonsevere. See generally JS. But in any event, those findings are supported by the state-agency medical consultants'

---

[5] As previously noted, around January 2012 (shortly before he applied for DIB, in March 2012), Plaintiff was diagnosed with certain heart conditions. As a result, he asked his cardiologist to place him on "permanent disability," but she declined, stating that his heart condition was not "permanently disabling" and encouraging him to resume "routine exercise." AR 1348, 1350.

opinions that Plaintiff's mental conditions were nonsevere, AR 74-75, 84, 86, and the lack of evidence of any functional limitations stemming from Plaintiff's hypertension.

Remand is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: December 29, 2016

/s/ 
DOUGLAS F. McCORMICK
United States Magistrate Judge